**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martin V. Flores, a single man, | No. CV 09-0945-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Maricopa County, a public entity; et al., | |
| Defendants. | |

On February 8, 2008, Detective Michael Ross of the Phoenix Police Department arrested Martin Flores for presenting false identification, in violation of A.R.S. § 13-2002(A) (2002). Ross transported Flores to the Maricopa County Jail, where he transferred custody of Flores to Sheriff's Deputies. Flores was released from custody seven days later. The Maricopa County Attorney's Office did not pursue charges.

Following his release, Flores initiated suit in state court against multiple defendants: the City of Phoenix, the Phoenix Police Department, Police Chief Jack Harris, Detective Michael Ross, Maricopa County, Maricopa County Sheriff's Office, and Sheriff Joseph Arpaio. Dkt. #1-3 at 7. The complaint asserts federal constitutional violations pursuant to 42 U.S.C. § 1983, as well as state law claims for false arrest and imprisonment, negligence, gross negligence, and intentional infliction of emotional distress. Dkt. #1-3 at 13-15. Defendants removed the action to this Court. Dkt. #1 at 1. All state law claims against Defendants Harris and Ross, and the state law negligence claims against the remaining

defendants, have been dismissed. Dkt. #25. Defendants Phoenix Police Department and Maricopa County Sheriff's Office have been dismissed as non-jural entities. Dkt. #29 at 7.

Defendant Ross has moved for summary judgment on the § 1983 claim. Dkt. #47. The motion is fully briefed. Dkt. ##54, 56. Neither party requested oral argument. Because Plaintiff has failed to present evidence to create a genuine issue of material fact, the Court will grant the motion.

**I.     Summary Judgment Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**II.    Defendant Ross' Motion.**

Defendant Ross seeks summary judgment on the ground of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, --- U.S. ---, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotations omitted).

Qualified immunity involves a two-part inquiry: the merits of the constitutional claim and the issue of immunity. *See Johnson v. County of Los Angeles*, 340 F.3d 787, 791 (9th

Cir. 2003). For the constitutional inquiry, the Court must determine whether the evidence, viewed in the light most favorable to the party asserting the injury, shows the officer's conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated in part on other grounds by Pearson*, 129 S. Ct. at 818. The immunity question asks whether the public official knew, or should have known, that he was violating a well-established constitutional right. *Johnson*, 340 F.3d at 791-92. If the evidence is insufficient to establish either element, the plaintiff's claims fail. *See Mattos v. Agarano*, 590 F.3d 1082, 1086 (9th Cir. 2010).

Plaintiff claims that Defendant Ross violated his Fourth Amendment rights by detaining and arresting Plaintiff without a warrant and without probable cause. Defendant, as the party moving for summary judgment, has the burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Defendant has met his burden. He has presented evidence sufficient to support a finding that Plaintiff was arrested with probable cause. Dkt. #48-1.

To survive summary judgment, Plaintiff must set forth facts that create a genuine issue as to whether Defendant violated his Fourth Amendment rights. Rule 56 prevents a party opposing motions for summary judgment from "rely[ing] merely on allegations or denials in its own pleading." Instead, a party's response must – by affidavits or otherwise – "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Furthermore, "[l]egal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid summary judgment." *Estrella v. Brandt*, 682 F.2d 814, 819-20 (9th Cir. 1982); *see Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001).

Plaintiff is represented by counsel in this case. He makes factual allegations in his complaint and response brief (Dkt. ##1-3, 54, 55), but presents no supporting evidence. Plaintiff implies that additional discovery is necessary (Dkt. #54 at 4, 6), but he has not invoked Rule 56(f) to request additional time to prepare his opposition. Instead, he cites *Grant v. City of Long Beach*, 315 F.3d 1081, 1089 (9th Cir. 2002), for the proposition that

1 | his "allegations" against Defendant are sufficient to prevent summary judgment on the
2 | constitutional issue. Dkt. #54 at 3. *Grant*, however, was a criminal case in which the
3 | defendant was arguing that his motions for judgment as a matter of law, following a trial,
4 | should have been granted. *Grant*, 315 F.3d at 1083. When the Ninth Circuit noted that
5 | "Grant's allegations that the officers arrested him without probable cause satisfy this
6 | threshold [constitutional] inquiry," it was referring to allegations made at trial and supported
7 | by evidence. *Id.* at 1089. *Grant* does not stand for the proposition that a party can avoid
8 | summary judgment by merely relying on the allegations in his complaint and legal
9 | memoranda.

In sum, Plaintiff has not presented any evidence that can be considered in evaluating the merits of the Fourth Amendment claims against Defendant. Accordingly, the Court will evaluate the only evidence before it – the evidence provided by Defendant Ross – in the light most favorable to the Plaintiff. Based on that evidence and standard of review, the Court concludes that Defendant had probable cause to arrest Plaintiff.

**A.     Defendant Ross Did Not Violate Plaintiff's Fourth Amendment Rights.**

Under the Fourth Amendment, a warrantless arrest is constitutional if it is based on probable cause. *See Blackenhorn v. City of Orange*, 485 F.3d 463, 470-71 (9th Cir. 2007). Probable cause exists if, at the moment the arrest was made, "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that a violation of law had occurred. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009). This is an objective standard that asks whether an officer's behavior was reasonable at the time of arrest, not whether a more reasonable approach could be constructed years later in litigation. *See Hunter*, 502 U.S. at 228. An officer's subjective motivation for making an arrest is irrelevant, so long as some other objectively reasonable grounds existed for the arrest. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *Moreno v. Baca*, 431 F.3d 633, 640 (9th Cir. 2005). An acquittal on the underlying criminal

charges does not show that the arrest was made without probable cause. *See Picray v. Sealock*, 138 F.3d 767, 772 (9th Cir. 1998).

### 1. Defendant Ross had Probable Cause for the Initial Traffic Stop.

As stated in Defendant Ross' affidavit, at approximately 2:30 a.m. on February 8, 2008, while on routine patrol, Defendant Ross stopped Plaintiff's vehicle because it was missing a license plate light. Dkt. #48, ¶¶ 1-2. Arizona law requires vehicles to have a light that "illuminates . . . the rear license plate and renders it clearly legible from a distance of fifty feet to the rear." A.R.S. § 28-925(C). Defendant Ross avows that Plaintiff's vehicle was "operating without a license plate light." Dkt. #48, ¶ 2. Even construing this evidence in favor of Plaintiff, the Court cannot say that it was unreasonable for Defendant to believe that Plaintiff was violating the law. A reasonable officer could have believed that A.R.S. § 28-925(C) was violated if the officer saw a vehicle "operating without a license plate light" at two-thirty in the morning. Because a reasonable police officer could have believed Plaintiff was violating the law, no matter how slight the violation, Defendant had probable cause to make the initial traffic stop. *See Whren*, 517 U.S. at 810.

Plaintiff claims that only "one of his two license plate lights were burnt out," (Dkt. #54 at 1) and denies that he was operating his vehicle without a license plate light (Dkt. #55, ¶ 2). Plaintiff provides no evidence in support of these assertions. *Id*. The only evidence before the Court thus establishes that Defendant had probable cause for initiating the traffic stop.

### 2. Defendant had Probable Cause to Arrest Plaintiff.

The evidence shows that Defendant Ross asked Plaintiff for his driver license, registration, and proof of insurance upon stopping Plaintiff's vehicle. Dkt. #48, ¶ 4. Plaintiff told Defendant that he did not have an Arizona driver license or insurance because he was a Mexican citizen and was only visiting Arizona. *Id.* ¶ 5. Plaintiff then presented Defendant with a license that appeared to be from Baja California, Mexico. *Id.* ¶ 7. While Plaintiff was retrieving his license, Defendant saw that Plaintiff had discount cards from several Arizona grocery stores. *Id.* ¶ 8.

Defendant conducted a records check on Plaintiff and found that he had been issued an Arizona Identification Card with an Arizona address. *Id.* ¶ 6. Defendant then compared the driver license Plaintiff presented to the Baja California, Mexico driver license depicted in the International I.D. Checking Guide. *Id.* ¶ 9. Defendant found several discrepancies between the license presented and the model license in the Checking Guide, including "blurred characteristics" in the state seal, name, and map, mismatched "color overlap of the picture," missing state map and logo in the license overlay, and a picture that "did not appear correct." *Id.* Based on the apparent deficiencies in Plaintiff's license, the Arizona address Plaintiff had listed in his identification card records, and the discount cards from local grocery stores in Plaintiff's possession, Defendant arrested Plaintiff for presenting forged identification. *Id.* ¶ 10. Defendant believed that Plaintiff was, in fact, an Arizona resident and provided a Mexican driver license under false pretenses. *Id.* ¶¶ 10-11.[1]

A person commits forgery under Arizona law if he "knowingly possesses" or "offers or presents" a forged instrument. A.R.S. § 13-2002. Three factors support the Court's finding that Defendant Ross had probable cause to arrest Plaintiff for violating § 13-2002. First and most important, the characteristics of the Plaintiff's license could have led a reasonable officer to believe the license was a forgery. The evidence shows that the state seal, name, and map on the license were blurred, and that there did not appear to be a state map or logo on the license overlay. Moreover, in comparison to a model license in the International I.D. Checking Guide, used by officers to determine the validity of foreign licenses, the color overlap on Plaintiff's picture did not appear to be correct. Even without

---

[1]Defendant submitted evidence that he found several other items in Plaintiff's possession that would suggest Plaintiff lived in Arizona. *Id.* at ¶ 11. Although the items may have reinforced Defendant's probable cause determination, these items were retrieved following arrest (*id.*) and cannot be considered in determining the reasonableness of the initial arrest. *See Hunter*, 502 U.S. at 228-29 (noting that probable cause is determined at the time of arrest). Plaintiff contends that he told Defendant that his Mexican driver license was legitimate, that he was legally visiting Arizona from Mexico, and that he provided the Defendant valid Mexican vehicle insurance and registration. Dkt. #54 at 1. Plaintiff's allegations are not supported by any evidence.

seeing Plaintiff's actual license or the I.D. Checking Guide, the Court is persuaded that an officer inspecting a license with the characteristics of Plaintiff's license, as shown by the evidence, would reasonably believe a forgery was presented. *See United States v. Dede*, No. 01-3605, 83 Fed. Appx. 732, 736-37 (6th Cir. 2003) (officer had probable cause to arrest when presented with "flimsy" and "blurred" driver license, which had "misaligned type" and a "crooked picture"); *see also United States v. Benevento*, No. 2:07-CR-136-RCJ-PAL, 2008 WL 2372931, at *6 (D. Nev. June 6, 2008) (officer had probable cause to arrest when defendant provided false name and defendant obviously did not match photograph on file for provided name).

Second, Defendant ran a records check on Plaintiff and discovered that Plaintiff had been issued an Arizona Identification Card. When the Defendant requested identification from Plaintiff, however, Plaintiff presented him with a Mexican driver license.[2] It is certainly possible for a former Arizona resident to become a resident of Mexico, which would explain the old Arizona Identification Card and the current Mexican driver license, but the record is devoid of any explanation for this discrepancy that was available to Defendant at the time of arrest. A reasonable officer would be suspicious of a person's true residency if they uncovered official identification for that person from two different countries, without explanation. *Cf. United States v. Butler*, No. CR06-0301RSL, 2007 WL 208360, at *2 (W.D. Wash. Jan 23, 2007) (officer had probable cause to arrest when defendant provided two different names and birth dates, neither of which registered in officer's records).

Finally, when Plaintiff was retrieving his license, Defendant Ross noticed that Plaintiff was carrying discount cards for several grocery stores located in Arizona. Certainly, Mexican residents can, and do, shop at grocery stores in the United States. It also is true,

---

[2] Defendant's initial request for Plaintiff's identification following the traffic stop was reasonable under the Fourth Amendment. *See United States v. Diaz-Castaneda*, 494 F.3d 1146, 1152 (9th Cir. 2007) ("The police may ask people who have legitimately been stopped for identification without conducting a Fourth Amendment search or seizure.").

however, that a person possessing discount cards for Arizona grocery stores is more likely to be a resident of Arizona than a person that does not have any such cards. In concert with the other facts known to Defendant, an officer seeing these cards could reasonably believe that the person carrying them was an Arizona resident.

Under the totality of the circumstances, the Court concludes that Defendant had probable cause to believe Plaintiff violated A.R.S. § 13-2002.

The information Defendant obtained following Plaintiff's arrest did not extinguish probable cause. Plaintiff alleges that Defendant found a valid B1/B2 border crossing visa, that Plaintiff told Defendant the visa was valid, and that a Sheriff's Deputy told Defendant the visa appeared to be valid. Dkt #54 at 2. Even if the Court were to consider these unsupported allegations as evidence, they would not defeat probable cause for the arrest and ultimate transfer of Plaintiff to the Sheriff's Office. Claims of false arrest fail when any charge underlying the arrest is supported by probable cause. *See Lacy v. County of Maricopa*, 631 F. Supp. 2d 1183, 1194 (D. Ariz. 2008). Here, the evidence confirms that the Defendant had probable cause to arrest the Plaintiff for presenting a forged document. The fact that Defendant later discovered evidence that might suggest Plaintiff was a Mexican citizen does not detract from the fact that Plaintiff presented an apparently forged license. Nothing Defendant discovered mitigated or explained the discrepancies in the license. Granted, the post-arrest discoveries might have diminished Defendant's theory that Plaintiff was an Arizona resident, but Plaintiff's arrest was not based on his residency. Defendant arrested the Plaintiff for presenting false identification and the evidence regarding the unusual characteristics of that identification was sufficient, on its own, to create probable cause for that crime.[3]

---

[3]Commissioner Ireland's probable cause finding at Plaintiff's initial appearance has no bearing on whether Defendant acted with probable cause. Dkt. #47 at 3. The Court's inquiry is whether there was probable cause at the time of arrest (*see Beck*, 379 U.S. at 91; *McSherry*, 584 F.3d at 1135), not whether there was probable cause to continue detaining Plaintiff after he was released from Defendant's custody. The fact that prosecutors did not pursue charges against Plaintiff is similarly irrelevant. *See Picray*, 138 F.3d at 772.

Defendant has presented sufficient evidence to establish that he had probable cause to arrest Plaintiff for presenting forged documents. Plaintiff has not presented opposing evidence. Therefore, Defendant has met his burden for summary judgment on Plaintiff's Fourth Amendment claims against him. Because the motion is resolved in Defendant's favor on the merits of Plaintiff's constitutional claims, the Court need not reach the qualified immunity issue. *See Pearson*, 129 S. Ct. at 821.

### B. Defendants City of Phoenix and Chief Jack Harris.

Defendant Ross correctly argues that, if summary judgment is granted in his favor, Defendants City of Phoenix and Phoenix Police Chief Jack Harris must also be granted summary judgment on Plaintiff's § 1983 claims. Plaintiff claims that the City and Chief Harris are legally responsible for the unconstitutional actions of Defendant Ross. Without an underlying constitutional violation by Defendant Ross, neither the City nor Chief Harris can be held liable for Plaintiff's constitutional claims. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *McSherry*, 584 F.3d at 1147.

**IT IS ORDERED:**

1. Defendant Michael Ross' motion for summary judgment (Dkt. #47) is **granted**.
2. Summary judgment is granted in favor of Defendants City of Phoenix and Jack Harris on Plaintiff's 42 U.S.C. § 1983 claims against them.

DATED this 15th day of March, 2010.

_____
David G. Campbell
United States District Judge